UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC WATSON, et al., | CASE NO. C21-1622 RSM |
| Plaintiffs, | ORDER |
| v. | |
| MIKE ROFF, et al., | |
| Defendants. | |

### I.   INTRODUCTION

Plaintiffs Eric and Sarah Watson, proceeding pro se, filed a proposed complaint related to the storage of their boat, a "rare one of a kind, 1962 Chris Craft 50 foot Constellation." Dkt. #1 at 8. Plaintiffs did not pay the filing fee at the time of filing and did not seek to proceed *in forma pauperis* at that time.[1] *See* Dkt. #2 (letter from the Clerk providing notice of filing deficiencies). Shortly after filing their complaint, Plaintiffs filed a Motion for Expedited Hold, Stop, End Attempt of Sale, and or Destruction of Plaintiffs [sic] Vessel. Dkt. #5.

---

[1] Plaintiff Sarah Watson has since filed a declaration and application to proceed *in forma pauperis*. Dkt. #6. Her application has not yet been ruled upon. Plaintiffs have also remedied their failure to attach a civil cover sheet as required by local rule. Dkt. #4.

ORDER – 1

Identifying several significant defects which need to be addressed by Plaintiffs before this matter proceeds, the Court denies their motion and orders Plaintiffs to file an amended complaint before seeking further relief from the Court.

## II.     BACKGROUND

From the facts strew throughout Plaintiffs' complaint and motion, the central focus of Plaintiffs' lawsuit is Latitude Marine Services, LLC's[2] dry storage of Plaintiffs' boat. On June 12, 2020, Plaintiffs had their boat delivered to Latitude Marine so that it could be placed in dry storage in advance of work to repair holes in the boat's hull. Plaintiffs' boat appears to still be stored at Latitude Marine, has not been repaired, and has been further damaged by Latitude Marine. Plaintiffs further allege that their boat storage was governed by an oral agreement and later by a written agreement they were forced to sign. Plaintiffs allege that they have met their payment obligations under the terms of those agreements, but that Latitude has acted badly, restricting Plaintiffs' access to their boat, damaging the boat, and now threatening to begin eviction proceedings or sell the boat at auction, or both.

While Plaintiffs' complaint appears to be with Latitude Marine, they do not sue the limited liability company itself. Rather, Plaintiffs have named several individuals—Mike Roff, KJ Roff, Chrisi Dite, and Bob Cornelius—that are associated with Latitude Marine and with whom Plaintiffs have interacted while their boat has been in storage. They reference Latitude Marine's "owner" and "CEO," Mike Roff, as taking actions to damage the boat while it was under Latitude Marine's control and acting unreasonably in negotiating the terms of storage and

---

[2] The Court takes judicial notice that searching the Washington Secretary of State's database of corporations for "latitude marine" provides results for "Latitude 46 Marine Consultants LLC" and "Latitude Marine Services, LLC." *See* WASH. CORPS. AND CHARITIES FILING SYS., https://ccfs.sos.wa.gov/#/. "Latitude Marine Services, LLC has a principal office located in La Conner, and the Court presumes that this is the entity with which Plaintiffs dealt.

ORDER – 2

repairs. Plaintiffs reference Latitude Marine's "President," KJ Roff, as unreasonably estimating the cost for repairs, as preventing Plaintiffs' private repairs, and as threatening eviction if Plaintiffs did not execute a written agreement. Plaintiffs reference a manager, Bob Cornelius, as preventing Plaintiffs from accessing the boat while it was under Latitude Marine's control. And lastly, Plaintiffs reference Chrisi Dite, a "service writer," as preventing payments necessary to protect Plaintiffs' interests.[3]

### III.   DISCUSSION

The Court starts, as it must, with the question of whether the Court has jurisdiction to hear this dispute. The United States District Courts are courts of limited jurisdiction, and a plaintiff bears the burden of establishing that the case is properly filed in a district court. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the federal court to assert subject matter jurisdiction over the action. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). From the face of Plaintiffs' complaint, this case does not appear to fall within the Court's subject matter jurisdiction.

**A. Diversity and Federal Question Jurisdiction**

In broad, but generally determinative terms, district courts are afforded subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States" and over cases "where the matter in controversy exceeds the sum or value of $75,000" and is between diverse parties, i.e., citizens of different states. *See* 28 U.S.C. §§ 1331, 1332(a). These two statutes convey federal question and diversity jurisdiction on district courts.

---

[3] Plaintiffs reference manager Jay Mckittrick as the individual they entered into a verbal agreement with but do not name Mr. Mckittrick as a defendant.

ORDER – 3

### 1. Federal Question

Here, Plaintiffs do not allege an adequate basis for invoking the Court's federal question jurisdiction. Plaintiffs point to no federal statutes or Constitutional provisions that govern or even impact their claims. At best, Plaintiffs indicate that they "believe the Defendants are acting the same way as the case with the homosexuals ordering cakes and flowers for a wedding and refused services." Dkt. #1 at 11. The Court presumes this is an opaque reference to the Supreme Court's decision in *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com'n*, ___ U.S. ___, 138 S. Ct. 1719 (2018). But that case dealt with Colorado's Anti-Discrimination Act—not applicable here—and the Act's intersection with the Constitution's Free Exercise Clause—not implicated by Plaintiffs' allegations. Even if Plaintiffs mistakenly refer to *Masterpiece Cakeshop* as a shorthand for unlawful discrimination, they do not allege that they belong to any protected class. As a result, Plaintiffs' complaint fails to invoke the Court's federal question jurisdiction.

### 2. Diversity

Plaintiffs also do not allege adequate bases for invoking the Court's diversity jurisdiction. This is true because, although Plaintiffs indicate they are seeking $1,450,000.00, the true amount in controversy is unclear and appears to be limited to the value of Plaintiffs' unseaworthy boat. Further, and even if Plaintiffs could satisfy the jurisdictional threshold, Plaintiffs fail to allege that the parties are diverse. *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008) ("Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff."). Plaintiffs themselves appear[4] to be citizens of Washington. *See* Dkt. #1 at 4–5. But Plaintiffs also associate all the named defendants with Washington, precluding diversity jurisdiction. See generally *id.*

---

[4] Plaintiffs confusingly filled in the portion of their complaint form that is intended to identify corporate parties by their state of incorporation and principal place of business instead of filling

ORDER – 4

**B. Admiralty Jurisdiction**

Because Plaintiffs' case relates to their boat, the Court also considers whether this case falls within the Court's admiralty jurisdiction. The United States Constitution extends the "judicial Power . . . to all Cases of admiralty and maritime Jurisdiction." U.S. CONST. art. III, § 2. Congress has likewise granted district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Of note, however, "[t]he primary purpose of federal admiralty jurisdiction is to 'protect [] commercial shipping' with 'uniform rules of conduct.'" *In re Carter*, 743 F. Supp. 2d 103, 106 (D. Conn. 2010) (quoting *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 298 (2d Cir. 2009) (quotation marks omitted).

A tort falls within district courts' admiralty jurisdiction where it "*both* occurred on navigable waters *and* [bore] a significant relationship to traditional maritime activity" *Id.* at 107 (citing *Sisson v. Ruby*, 497 U.S 358, 362 (1990) (emphasis in original). Similarly, a contract claim may fall within the Court's admiralty jurisdiction where "the character of the work to be performed under a contract" "relates to the ship and its uses as such, or to commerce or navigation on navigable waters, or to transportation by sea." *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 671 (9th Cir. 1997) (citing *Hinkins S.S. Agency, Inc. v. Freighters, Inc.*, 498 F.2d 411, 412 (9th Cir. 1974); *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 302 (2d Cir. 1987), *cert. denied*, 484 U.S. 1042 (1988)).

Here, Plaintiffs' claims appear to be based on contractual and tortious acts and omissions, but their complaint does not establish that these claims fall within the Court's admiralty jurisdiction. Most significantly, Plaintiffs' boat, at all relevant times, has been stored on dry land,

---

in the portions identifying individuals as citizens of a particular state. Even then, Plaintiffs indicate that every individual defendant is "incorporated under the laws of the State of Washington" and has a principal place of business in the State of Washington." *See e.g.*, Dkt. #1 at 4.

ORDER – 5

outside the scope of "navigable waters." *See Garrett*, 981 F.3d 739, 741 (9th Cir. 2020) ("Waters are navigable 'when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.'") (quoting *The Daniel Ball*, 77 U.S. (10 Wall.) 557 (1870)). Accordingly, Plaintiffs' complaint does not contain allegations adequate to invoke the Court's admiralty jurisdiction.

**C. Plaintiffs' Motion**

Having found that Plaintiffs' complaint does not establish that this case falls within the Court's subject matter jurisdiction, the Court finds it inappropriate to rule on the merits of Plaintiffs' motion at this time. Further, the Court notes that Plaintiffs' motion fails for several procedural reasons.

Plaintiffs' motion appears to seek injunctive relief. Plaintiffs, however, give no indication that they have served process, or the motion, on the defendants. Where an ex parte——"without written or oral notice to the adverse party or its attorney"—injunction is sought, the Court may grant the TRO

> only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). Further, this Court's local rules require that "[u]nless the requirements of Fed. R. Civ. P. 65(b) for issuance without notice are satisfied, the moving party must serve all motion papers on the opposing party before or contemporaneously with the filing of the motion and include a certificate of service with the motion." LOCAL RULES W.D. WASH. LCR 65(b)(1). The Court denies the motion, without prejudice, because Plaintiffs have failed to satisfy these requirements and because the Court appears to lack subject matter jurisdiction. If Plaintiffs can

ORDER – 6

establish that the Court has jurisdiction to hear this matter, Plaintiffs may again seek relief from the Court.

### IV.  CONCLUSION

Accordingly, the Court hereby finds and ORDERS that Plaintiffs shall file an Amended Complaint **no later than twenty-one (21) days from the date of this Order**.  In the Amended Complaint, Plaintiffs must include a short and plain statement demonstrating that this matter falls within the scope of the Court's subject matter jurisdiction.  Failure to file an Amended Complaint will result in dismissal of this case.

The Clerk shall send a copy of this Order to Plaintiffs at 7807 Kapowsin Hwy. E., Graham, WA  98338.

Dated this 7th day of January, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE